## FIRST NATIONAL BANK OF SAN JOSE *v.* STATE OF CALIFORNIA ET AL.

ERROR TO THE SUPREME COURT OF THE STATE OF CALIFORNIA.

No. 276. Submitted April 13, 1923.—Decided June 4, 1923.

A state law providing for the escheat to the State of bank deposits after they have remained intact and unclaimed for more than twenty years, when no notice of his residence has been filed with the bank by the depositor or any claimant, is void as applied to deposits in National Banks. Calif. Code Civ. Proc. § 1273; U. S. Rev. Stats., § 5136. P. 369.

186 Cal. 746, reversed.

ERROR to a judgment of the Supreme Court of California affirming a judgment for the State against the plaintiff in error Bank, in an action to declare unclaimed deposits escheated to the State.

*Mr. S. F. Leib* for plaintiff in error.

*Mr. U. S. Webb,* Attorney General of the State of California, and *Mr. Frank L. Guerena,* Deputy Attorney General, for defendants in error.

MR. JUSTICE McREYNOLDS delivered the opinion of the Court.

Section 1273, California Code of Civil Procedure, declares, "All amounts of money heretofore or hereafter deposited with any bank to the credit of depositors who have not made a deposit on said account or withdrawn any part thereof or the interest and which shall have remained unclaimed for more than twenty years after the date of such deposit, or withdrawal of any part of principal or interest, and where neither the depositor or any claimant has filed any notice with such bank showing his or her present residence, shall, with the increase and proceeds thereof, escheat to the state." It further directs

the Attorney General to institute actions in the Superior
Court for Sacramento County against banks and de-
positors to recover all such amounts, "and if it be de-
termined that the moneys deposited in any defendant
bank or banks are unclaimed as hereinabove stated, then
the court must render judgment in favor of the state de-
claring that said moneys have escheated to the state and
commanding said bank or banks to forthwith deposit all
such moneys with the state treasurer, to be received, in-
vested, accounted for and paid out in the same manner
and by the same officers as is provided in the case of other
escheated property." Section 15 of the Bank Act con-
tains similar provisions.

In a proceeding under § 1273 the trial court gave judg-
ment for the State against plaintiff in error for the
amount credited upon its books to P. A. Campbell for
more than twenty years, and this was affirmed by the
Supreme Court. 186 Cal. 746. We are asked to hold
that so construed and applied this section conflicts with
the laws of the United States touching national banks
and is therefore invalid.

The trial court found—

" That for more than twenty years prior to the institu-
tion of this action there was on deposit with the said de-
fendant bank to the credit of P. A. Campbell the sum of
$1,192.25; that for more than twenty years prior to the
institution of this action the said P. A. Campbell has not
made any deposit to the credit of said account or with-
drawn any part thereof or any interest or dividends accru-
ing thereon; that the said money and account so de-
posited and all accruing interest and dividends thereon
have remained unclaimed for more than twenty years
after the same were so deposited or credited, and after
the withdrawal of any part of the principal or interest
or dividends, and said moneys and account now are un-
claimed; that the date of the last transaction in connec-

tion with the said deposit of the said P. A. Campbell, whether by deposit or withdrawal of any portion of such account or by withdrawal of any interest or dividends accruing thereon, was on the 10th day of November, 1880; that neither the said depositor nor any claimant of the said deposit or account, or of any interest or dividends thereon, has filed any notice with the said defendant bank showing the present residence of the said P. A. Campbell, and the said P. A. Campbell is not known to the president or to the managing officers of the said defendant bank to be now living; that the name of the said depositor, P. A. Campbell, together with the date of the last transaction in connection with his said deposit or account, and the amount now on deposit in the said defendant bank to the credit of the said depositor were all contained in the annual statement of the said defendant bank filed with the State Controller of the State of California in January, 1917, as required by law, and the Attorney General of the State of California has been informed of all of the foregoing facts."

The Supreme Court declined to express an " opinion upon the question whether the judgment of the superior court herein operates as a present escheat of the rights of the several depositors against the respective banks, or whether under section 1272 they each still have the right within the time there stated to prosecute an action to obtain payment of their several deposits from the state treasurer," and said, " if they have such right the judgment of the superior court would not be a bar thereto."

Section 5136, U. S. Revised Statutes, confers upon national banks power to receive deposits, which necessarily implies the right to accept loans of money, promising to repay upon demand to lender or his order. These banks are instrumentalities of the Federal Government. Their contracts and dealings are subject to the operation of general and undiscriminating state laws which do

not conflict with the letter or the general object and purposes of congressional legislation. But any attempt by a State to define their duties or control the conduct of their affairs is void whenever it conflicts with the laws of the United States or frustrates the purposes of the national legislation or impairs the efficiency of the bank to discharge the duties for which it was created. *Davis* v. *Elmira Savings Bank,* 161 U. S. 275, 283, 288, 290.

" National banks organized under the act are instruments designed to be used to aid the government in the administration of an important branch of the public service. They are means appropriate to that end. . . . Being such means, brought into existence for this purpose, and intended to be so employed, the States can exercise no control over them, nor in any wise affect their operation, except in so far as Congress may see proper to permit. Anything beyond this is ' an abuse, because it is the usurpation of power which a single State cannot give.' " *Farmers' and Mechanics' National Bank* v. *Dearing,* 91 U. S. 29, 33, 34.

Congressional legislation in respect of national banks " has in view the erection of a system extending throughout the country, and independent, so far as powers conferred are concerned, of state legislation which, if permitted to be applicable, might impose limitations and restrictions as various and as numerous as the States." *Easton* v. *Iowa,* 188 U. S. 220, 229.

Plainly, no State may prohibit national banks from accepting deposits or directly impair their efficiency in that regard. And we think, under circumstances like those here revealed, a State may not dissolve contracts of deposit even after twenty years and require national banks to pay to it the amounts then due; the settled principles stated above oppose such power.

Does the statute conflict with the letter or general object and purposes of the legislation by Congress? Obvi-

ously, it attempts to qualify in an unusual way agreements between national banks and their customers long understood to arise when the former receive deposits under their plainly granted powers. If California may thus interfere other States may do likewise; and, instead of twenty years, varying limitations may be prescribed— three years perhaps, or five, or ten, or fifteen. We cannot conclude that Congress intended to permit such results. They seem incompatible with the purpose to establish a system of governmental agencies specifically empowered and expected freely to accept deposits from customers irrespective of domicile with the commonly consequent duties and liabilities. The depositors of a national bank often live in many different States and countries; and certainly it would not be an immaterial thing if the deposits of all were subject to seizure by the State where the bank happened to be located. The success of almost all commercial banks depends upon their ability to obtain loans from depositors, and these might well hesitate to subject their funds to possible confiscation.

This Court has often pointed out the necessity for protecting federal agencies against interference by state legislation. The approved principle of *obsta principiis* should be adhered to. *McCulloch* v. *Maryland,* 4 Wheat. 316; *Osborn* v. *United States Bank,* 9 Wheat. 738; *Farmers' and Mechanics' National Bank* v. *Dearing, supra; California* v. *Central Pacific R. R. Co.,* 127 U. S. 1; *Davis* v. *Elmira Savings Bank, supra; Easton* v. *Iowa, supra; Covington* v. *First National Bank,* 198 U. S. 100; *Farmers and Mechanics Savings Bank* v. *Minnesota,* 232 U. S. 516; *Choctaw, Oklahoma & Gulf R. R. Co.* v. *Harrison,* 235 U. S. 292; *Bank of California* v. *Richardson,* 248 U. S. 476.

*Reversed.*