### In re COMMERCIAL NAT. BANK (REED).

#### Civil Action No. 2435.

District Court, E. D. Pennsylvania.

June 6, 1942.

W. Albert Sanders, of Philadelphia, Pa., for Frank Gorman, escheator.

George G. Chandler and Robert T. Mc-Cracken, both of Philadelphia, Pa., for L. M. Reed, receiver for Commercial National Bank.

MOORE, District Judge.

The Commercial National Bank suspended business on February 28, 1933. Its affairs have since been in course of liquidation, first under a conservator, and later under receivers appointed by the Comptroller of the Currency. L. M. Reed at present occupies the office of receiver for Commercial National Bank. At the time this proceeding was instituted in the Court of Common Pleas No. 3 of the County of Philadelphia, the receiver had in his hands unclaimed funds in the amount of $265,-900. The petition for escheat filed in the state court alleges that these funds represent amounts due but unpaid to depositors and other creditors, which are escheatable under the statutes of Pennsylvania governing escheats.

The petition for escheat was filed by Frank Gorman, appointed as Escheator for that particular purpose by William J. Hamilton, Jr., Secretary of Revenue of the Commonwealth of Pennsylvania. The petition contained a prayer for a hearing and for a finding of escheat of all moneys in the hands of the receiver except moneys due to living persons; or moneys due to persons for whom personal representatives have been appointed, or corporations still in existence or their successors; or moneys which have been claimed by or paid to lawful claimants between the date of the bank's closing and the date of the hearing, or which might be lawfully claimed at the hearing; and a further prayer for the service of a copy of the petition on L. M. Reed, receiver of the Commerical National Bank, and on the United States District Attorney for the Eastern District of Pennsylvania.

The receiver notified the escheator of his intention to file a petition and bond for removal to the United States District Court, which petition and bond were then seasonably filed; but instead of entering an order of removal, the Court of Common Pleas No. 3 permitted an answer to the petition to be filed by the escheator, and, after hearing argument, entered an order dismissing the petition for removal "without prejudice to the right to file such petition when the question of escheat has been determined."

The receiver then filed his petition in this court to enjoin the escheator from proceeding further in the state court, and also filed in this court a transcript (originally uncertified, but later replaced with a certified transcript) of the record of proceedings in the state court. A temporary restraining order was entered on this petition, returnable on March 26, 1942, which date was later changed by agreement to March 24, 1942. The escheator filed a motion to remand the case to the state court

484

and the receiver filed a motion to dismiss the case. A consolidated hearing was had on the petition for injunction, motion to remand and motion to dismiss, all of which matters were fully argued both orally and in the briefs submitted to the court.

The following questions are presented for determination:

(1) Was the receiver a necessary party to the escheat proceeding?

(2) Is the proceeding one which is removable to a United States Court; and, if so

(3) Is it necessary that the state court in which the cause is pending enter an order of removal, or on the contrary, is the case removed by the filing of the requisite petition and bond?

(4) Is a state escheat statute valid which provides for the escheat of unclaimed deposits in the hands of the receiver of a closed national bank?

Prior to the year 1935, there was no statutory authority in Pennsylvania for escheating moneys in the hands of national banks or their receivers, and it had been held in the case of Columbia National Bank v. Powell, 1919, 265 Pa. 85, 108 A. 445, that moneys in national banks were not escheatable under the statutes then in force. By an amendment in 1935, 27 P.S. 282, escheat of moneys in a national bank or in the hands of its receiver was expressly authorized and it was provided that the escheat shall be "determined and enforced by an action in the nature of a bill in equity, filed by and in the name of the Attorney General, against the depositary, fiduciary, or debtor, and all of his or its depositors, beneficiaries, or creditors for whom he or it holds unclaimed moneys escheatable under the provisions of this act." The amendment further provides that "proceedings for the escheat of moneys in the possession or custody of any officer of any court shall be by a bill as provided for by this section in other cases, in which bill such officer and the persons entitled to such moneys shall be made codefendants."

■ No objection has been offered to the form of the proceeding as having been brought by a person appointed as escheator by the Secretary of Revenue under Section 614 of the Acts of 1929, P.L. p. 343, 72 P.S.Pa. § 614, instead of by a bill in equity filed in the name of the Attorney General. However, it is obvious that under the Pennsylvania statutes the proceeding must be against the receiver, since he it is who now stands in the place of the depositary and its depositors and creditors, for whom he is holding the unclaimed moneys alleged to be escheatable. The receiver is therefore, by the terms of the state statute, not only a necessary, but an indispensable party.

Even in the case of a suit against a state bank to escheat unclaimed funds, it has been held that the depositors are necessary defendants and must have reasonable notice and opportunity to be heard. Security Savings Bank v. People of State of California, 1923, 263 U.S. 282, 44 S.Ct. 108, 68 L.Ed. 301, 31 A.L.R. 391.

I am therefore of opinion that the receiver is a necessary party to this proceeding.

Section 28 of the Judicial Code, 28 U.S. C.A. § 71, provides in part: "Any suit of a civil nature, at law or in equity, arising under the Constitution or laws of the United States * * * of which the district courts of the United States are given original jurisdiction, in any State court, may be removed by the defendant or defendants therein to the district court of the United States for the proper district."

■ By the Judicial Code federal courts are given original jurisdiction "of all suits * * * for winding up the affairs of any such (national) bank." 28 U.S.C.A. § 41 (16). Since the principle is well settled that "the potentiality of originality" is a condition precedent to removability (Solanics v. Republic Steel Corporation et al., D.C., 34 F.Supp. 951, 954), it becomes necessary to inquire whether or not this proceeding for the escheat of funds in the hands of a national bank's receiver is one of which the United States Courts are given original jurisdiction. I am confronted at the outset with a dictum of the late Judge Dickinson in the case of Klein v. Brodbeck, D.C., 15 F.Supp. 473, to the effect that this court has no jurisdiction to enter a judgment of escheat in a suit brought by the escheator of the Commonwealth of Pennsylvania for that purpose. However, an examination of that case discloses that the moneys sought to be recovered in the escheat proceeding were funds which were in the control of the court merely because they had been paid into court pursuant to a decree, for the benefit of certain bondholders, some of whom had failed to claim their share of the funds, which had then been transferred from the

registry of the court into the treasury of the United States. Later, when proceedings for escheat of these same moneys were brought in the Common Pleas Court, and upon appeal to the Supreme Court of Pennsylvania and afterwards to the United States Supreme Court, the latter court held that the state court had the right to declare an escheat in that case because it did not "disturb or purport to affect the treasury's possession of the fund or the District Court's authority over it. Nor could it do so." United States v. Klein, 303 U.S. 276, 58 S.Ct. 536, 539, 82 L.Ed. 840. It is not held in that case, nor do I find any federal authority to support the proposition, that a proceeding for escheat may not be entertained by a federal court in cases where it involves the adjudication of rights in winding up the affairs of a national bank. On the other hand, in the case of Starr v. O'Connor, 6 Cir., 1941, 118 F.2d 548, the jurisdiction of federal courts is recognized to declare or deny escheat under state statutes in cases involving the winding up of the affairs of national banks. The Starr case was a proceeding for a declaratory judgment filed in the District Court for the Eastern District of Michigan by the Attorney General of the State of Michigan. Its purpose was to secure a declaration of rights to funds in the hands of a national bank, under a state statute similar in its general provisions to the statute of Pennsylvania. The District Court in that case held certain of the funds not to be escheatable, but gave the State of Michigan the right to certain other funds in the hands of the receiver for the national bank. Starr v. Schram, 24 F.Supp. 888. On appeal, the Circuit Court of Appeals for the Sixth Circuit held that none of the funds were escheatable, but expressed no doubt of the court's jurisdiction to entertain the suit.

█ In view of the nature of the instant proceeding, and notwithstanding the fact that it was commenced under the authority of the Pennsylvania escheat statutes, I am of opinion that this is a suit involving the winding up of the affairs of a national bank and that it is, therefore, a suit arising under the laws of the United States of which the district courts of the United States are given original jurisdiction. Consequently, it was removable to the district court.

█ I need not pass further upon the question of whether a state court has the power to deny removal in those cases where removal is sought by one who is not a party entitled to such removal. I have already expressed the opinion that the receiver, being a necessary and indispensable party, was so entitled. The clear weight of authority is to the effect that "it makes no difference whether he [the judge of the state court] signs the order or refuses to do so. In either event, the case will go to the federal court, and it will be for the latter to say whether it was or was not properly brought there." Williams v. New York, P. & N. R. Co., 4 Cir., 1926, 11 F.2d 363, 367, 45 A.L.R. 437. It follows that further proceedings before the state court will be enjoined as prayed for in the receiver's petition, and the plaintiff's motion to remand the case to the state court will be overruled.

It remains to be determined whether or not the motion of the receiver to dismiss the proceeding should be sustained. The statute providing for the distribution of funds in the hands of the receiver of a national bank reads in part as follows: "From time to time * * * the comptroller shall make a ratable dividend of the money so paid over to him by such receiver on all such claims as may have been proved to his satisfaction or adjudicated in a court of competent jurisdiction, and, as the proceeds of the assets of such association are paid over to him, shall make further dividends on all claims previously proved or adjudicated; and the remainder of the proceeds, if any, shall be paid over to the shareholders of such association, or their legal representatives, in proportion to the stock by them respectively held." 12 U.S.C.A. § 194.

█ In view of this statute, it is my opinion that the contract of deposit which is created when one deposits money in a national bank gives to such depositor a tontine right to receive his ratable proportion of any unclaimed deposits in case of insolvency and liquidation of the bank. The statute also gives to the stockholders of the bank the right to receive whatever surplus may remain after payment in full of all proper claims.

█ Principles of comity require that the national courts and the state courts should function as a harmonious and unified system in the administration of the law; but such considerations must yield to the paramount right of Congress to establish a

uniform system of laws on any subject coming within the sphere of the delegated congressional functions, and to the resulting right of litigants to invoke the jurisdiction of the national courts in determining disputes arising thereunder. It has never been doubted that the liquidation of national banks is a proper subject for congressional action. If state laws of escheat were permitted to operate upon unclaimed funds in the hands of a receiver of a national bank, confusion and inequality of distribution would be the inevitable result. In states whose escheat laws throw out a dragnet within which to enmesh all the unclaimed funds in the receiver's hands, neither the bank's creditors who prove claims nor the stockholders would receive any benefit from the existence of unclaimed funds, however large. In other states whose escheat laws are less than all inclusive, creditors and stockholders would receive some benefit but not to the full extent of the fund, and in other states which have no special escheat statutes, creditors and stockholders of the bank would participate in the entire unclaimed funds. Clearly Congress did not contemplate that depositors and stockholders· of national banks should be subject to any such discriminatory laws.

It must be remembered that the so-called "unclaimed" funds in the receiver's hands are not actually unclaimed within the true meaning of that word, unless the total moneys in his hands be more than enough to pay in full all creditors who have proved claims. The relation between a bank and its ordinary depositors is that of debtor and creditor. The books of the bank may show credits to depositors who, after the bank is closed, fail to make any claim against the bank; but this fact does not necessarily result in unclaimed funds, nor does it serve to earmark particular funds of the bank as the property of such depositors. All the funds on deposit in the bank other than those held in trust belong to the bank, and upon insolvency are to be distributed ratably by the Comptroller to the creditors who prove their claims under the law. Only in case a surplus exists after proven claims have been paid in full may a receiver of a national bank be said to have unclaimed funds in his hands. As I have already pointed out, even this surplus must under the federal statutes be distributed to the stockholders, and is not subject to escheat at the hands of a state.

The 1935 amendment to the Pennsylvania Escheat Statute providing for the escheat of unclaimed moneys in the hands of a receiver of a national bank contravenes the foregoing federal statute which provides for the ratable distribution thereof and is therefore invalid. Starr v. O'Connor, supra. First National Bank of San Jose v. State of California et al., 262 U.S. 366, 43 S.Ct. 602, 67 L.Ed. 1030.

I conclude that defendant's motion to dismiss the escheat proceeding must be sustained. An order may be entered in accordance with the foregoing opinion.