## Denise ROSE, et al.

v.

## CHASE MANHATTAN BANK USA, N.A. et al.

### No. SACV 05754JVSANX.

United States District Court, C.D. California.

Oct. 27, 2005.

Jeffrey N. Wilens, Lakeshore Law Center, Yorba Linda, CA, for Plaintiffs.

Gerrit Warren Bleeker, Howard N.Cayne, Kurt S. Fritz, Laurence J. Hutt, Arnold & Porter, Los Angeles, CA for Defendants.

SELNA, District Judge.

## I. BACKGROUND

Defendant Chase Manhattan Bank USA ("Chase") moves for a judgment on the pleadings based on Plaintiffs' Rose, Raitt, Abeyta, Reis (collectively "Rose") First Amended Complaint.

In the first cause of action, Rose asserts three claims under California's unfair competition law ("UCL"), Cal. Bus. & Prof. Code § 17200 *et seq.*, on behalf of a putative class of California credit cardholders who accepted offers of convenience check loans from Chase on or after June 13, 2001. The main thrust of Rose's claims is that Chase did not include information required by California Civil Code § 1748.9 ("Section 1748.9") in its offers, and that the failure to make those disclosures is an unlawful business practice under the UCL.

In the second cause of action, Rose asserts that Chase did not disclose that purchases paid for using convenience checks would accrue finance charges immediately, unlike purchases made with a credit card, and therefore that Chase engaged in deceptive conduct under the UCL. (FAC, ¶ 31.)

In the third cause of action, Rose asserts that Chase has committed unfair business practices because Chase "induced consumers to use the convenience checks without warning them they would incur immediate finance charges." (*Id.*, ¶ 40.) Rose further asserts that, "[e]ven if such

conduct were not unlawful, it was unfair because it served no legitimate business purpose while causing great harm to consumers." (*Id.*)

Rose seeks an order that Chase refund the members of the putative class the amounts paid in finance charges or transaction fees on the convenience checks, and disgorge all profits purportedly obtained by Chase's wrongful business conduct. Rose additionally seeks an injunction prohibiting Chase from continuing in its purported acts of unfair and unlawful competition and deceptive practices, an accounting, pre— and post-judgment interest, and costs including attorney's fees.

Chase asserts that it is entitled to a judgement on the pleadings because Section 1748.9 is preempted by federal law. (Mot., p. 1.) Chase claims that under the National Bank Act ("NBA"), 12 U.S.C. § 21 *et seq.*, regulations promulgated thereunder, and a long line of NBA preemption jurisprudence, national banks are free to exercise their banking powers without regard to state-imposed restrictions. (Mot., p. 1.) Chase therefore contends that Rose's allegations that Chase violated the UCL by failing to comply with Section 1748.9 fail as a matter of law. (*Id.*, p. 4.)

## II. *LEGAL STANDARD*

Under the Federal Rule of Civil Procedure 12(c), "[a]fter the pleadings are closed but within such time as not to delay the trial, any party may move for judgment on the pleadings." A motion for judgment on the pleadings should be granted only if "taking all the allegations in the pleading as true, the moving party is entitled to judgment as a matter of law." *McSherry v. City of Long Beach*, 423 F.3d 1015, 1021 (9th Cir.2005).

■ Issues of preemption may be resolved as a matter of law. *City of Auburn v. Qwest Corp.*, 260 F.3d 1160, 1172 (9th

Cir.2001); *Industrial Truck Ass'n, Inc. v. Henry*, 125 F.3d 1305, 1308 (1997).

■ Fed. R. Civ. P 12(c) additionally states that a motion for judgment on the pleadings shall be treated as a motion for summary judgment if matters outside the pleadings are presented to and not excluded by the Court. However, the Court need not turn the present motion for judgment on the pleadings into one for summary judgment. When a party submits an indisputably authentic copy of a document, and the document is referred to in the complaint, the Court does not have to convert the motion into a summary judgment motion. This is because the purpose of conversion is to give the plaintiff notice and an opportunity to respond. *GFF Corp. v. Associated Wholesale Grocers, Inc.*, 130 F.3d 1381, 1384 (10th Cir.1997). The Court finds that the documents submitted by Chase for judicial notice may be considered without converting the instant motion for judgment on the pleadings into one for summary judgment.

## III. *DISCUSSION*

### A. *NATIONAL BANK ACT*

■ Under 12 U.S.C. § 24 a national bank association shall have the power to "exercise by its board of directors or duly authorized officers or agents, subject to law, all such incidental powers as shall be necessary to carry on the business of banking … by loaning money on personal security." "The National Bank Act of 1864 was enacted to protect banks against intrusive regulation by the States." *Bank of America v. City and County of San Francisco*, 309 F.3d 551, 561 (9th Cir. 2002).

The Court finds that the NBA preempts Section 1748.9, and as discussed below, that a long line of jurisprudence addressing the preemptive effect of national bank-

ing laws demonstrates that Section 7.4008 merely codifies existing case law.

■ Federal law and state law conflict when compliance with both is a physical impossibility, or when state law is "an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." *Hines v. Davidowitz*, 312 U.S. 52, 67, 61 S.Ct. 399, 85 L.Ed. 581 (1941). The Court finds that the instant case involves the second type of conflict. In *Barnett Bank of Marion County, N.A. v. Nelson*, 517 U.S. 25, 32, 116 S.Ct. 1103, 134 L.Ed.2d 237, the Supreme Court held that "grants of both enumerated and incidental 'powers' to national banks" are generally interpreted as "grants of authority not normally limited by, but rather ordinarily preempting, contrary state law." *See generally First Nat. Bank of San Jose v. California*, 262 U.S. 366, 368–69, 43 S.Ct. 602, 67 L.Ed. 1030 (1923) (holding that state attempts to define or control the conduct of national banks is void if they conflict with Federal laws, frustrate the purposes of the national legislation, or impair the efficiency of the bank to discharge the duties for which it was created); *Easton v. Iowa*, 188 U.S. 220, 229–30, 23 S.Ct. 288, 47 L.Ed. 452 (1903); *Waite v. Dowley*, 94 U.S. 527, 533, 4 Otto 527, 24 L.Ed. 181 (1876); *Franklin Nat. Bank of Franklin Square v. New York*, 347 U.S. 373, 375–79, 74 S.Ct. 550, 98 L.Ed. 767 (1954). In *Barnett* the Supreme Court stated that "[i]n defining the preemptive scope of statutes and regulations granting a power to national banks, [past Supreme Court precedent] . . . normally Congress would not want States to forbid, or impair significantly, the exercise of power that Congress explicitly granted." 517 U.S. at 33, 116 S.Ct. 1103. The *Barnett* Court further held, "where Congress has not expressly condition the grant of 'power' upon a grant of state permission, the Court has ordinarily found that no such condition applies." (*Id.*, at 34, 116 S.Ct. 1103.)

■ The Court finds that under the above cited principles of preemption, Section 1748.9 is preempted when applied to national banks. The NBA expressly gives national bank's the power to loan money on personal security. 12 U.S.C. § 24 Congress did not condition its grant of power on a national bank's compliance with state laws which impose disclosure requirements on a bank's ability to make loans to residents of the state. This demonstrates that there should be a "broad interpretation of the [power to lend money] that does not condition federal permission upon that of the State." *Barnett*, 517 U.S. at 34–5, 116 S.Ct. 1103.

Section 1748.9 states:

(a) A credit card issuer that extends credit to a cardholder through the use of a preprinted check or draft shall disclose on the front of an attachment that is affixed by perforation or other means to the preprinted check or draft, in clear and conspicuous language, all of the following information:

(1) That use of the attached check or draft will constitute a charge against your credit account.

(2) The annual percentage rate and the calculation of finance charges . . . associated with the use of the attached check or draft.

(3) Whether the finance charges are triggered immediately upon the use of the check or draft.

It is apparent from the face of the statute that it conditions Chase's ability to conduct lending in the form of convenience checks. Hence the Court finds that pursuant to the NBA, Chase may make offers for convenience check loans to their credit card holders without regard to Section 1748.9. The Court's conclusion is bolstered by the relevant regulator's view concerning the scope

of the proscribed state regulation. *See* discussion *infra.*

## B. *FEDERAL REGULATION*

### 1. *Scope of Section 7.4008*

Pursuant to the NBA, the Office of the Comptroller of the Currency ("OCC"), the federal agency exercising exclusive control over the national banks, promulgated a preemption regulation applicable to lending by national banks. *See* 69 Fed.Reg. 1904–17 (Jan. 13, 2004). With respect to the applicability of state law, that regulation states, "[e]xcept where made applicable by Federal law, state laws that obstruct, impair, or condition a national bank's ability to fully exercise its Federally authorized non-real estate lending powers are not applicable to national banks." 12 C.F.R. § 7.4008(d)(1). In addition, Section 7.4008 states that "[a] national bank may make non-real estate loans without regard to state law limitations concerning: [d]isclosure and advertising, including laws requiring specific statements, information, or other content to be included in credit application forms, credit solicitations, billing statements, credit contracts, or other credit-related documents." 12 C.F.R. § 7.4008(d)(2)(viii).

The OCC has stated that under the standard in the regulation, "state laws do not apply to national banks if they impermissibly constrain a bank's exercise of a federally authorized power." 69 Fed.Reg. at 1910–11. Additionally, the OCC states that the words in subsection (d)(1) are "drawn directly from applicable Supreme Court precedents," and are meant to be a "distillation of the various preemption constructs articulated by the Supreme Court, as recognized in [*Hines v. Davidowitz,* 312 U.S. 52, 61 S.Ct. 399, 85 L.Ed. 581 (1941)] and [*Barnett Bank v. Nelson,* 517 U.S. 25, 116 S.Ct. 1103, 134 L.Ed.2d 237 (1996)]." (*Id.*)

■ The Court finds that Section 7.4008(d)(1) *and* (d)(2) embody prior Supreme Court case law. Rose counters that "no where does the OCC claim subdivision (d)(2) is declarative of existing law." (Opp'n, p. 16; bold face in original.) However, the OCC has stated that "[t]he preemption standard applied in this final rule is entirely consistent with the standards articulated by the Supreme Court." 69 Fed.Reg. at 1910. The Court finds this statement to be consistent with a finding that the OCC intended both subdivision (d)(1) *and* (d)(2) to codify existing Supreme Court law. In addition, even if the OCC's statements only pertained to subsection (d)(1), the Court agrees with Chase in its assertion that the OCC can determine which types of state laws "obstruct, impair, or condition a national bank's ability to fully exercise its Federally authorized non-real estate lending powers," and it did just that when it enacted subsection (d)(2). 12 C.F.R. § 7.4008(d)(1).

The Court finds that the long line of jurisprudence addressing the preemptive scope of national banking laws discussed above supports the Court's conclusion that Section 7.4008(d)(1) *and* (d)(2) merely codify existing case law. As the Court stated in *Bank of America,* "[t]he supremacy of the federal government in regulating national banks has long been recognized." 309 F.3d at 561.

### 2. *Validity of Section 7.4008*

■ In order to have preemptive effect, Section 7.4008 must be a valid enactment by a federal agency acting within the scope of its congressionally delegated authority to preempt state laws and regulations. *See generally La. Pub. Service Comm'n v. FCC,* 476 U.S. 355, 369, 106 S.Ct. 1890, 90 L.Ed.2d 369 (1986). The Court finds that Section 7.4008 is a valid exercise of the Comptroller's power to

preempt inconsistent state law. *See Conf. of State Bank Supervisors v. Conover,* 710 F.2d 878, 885 (D.C.Cir.1983). *See also Wells Fargo Bank, N.A. v. Boutris,* 419 F.3d 949, 962 (9th Cir.2005).

Pursuant to 11 U.S.C. § 43 ("Section 43"), the OCC possesses the authority to preempt certain state laws. *Wells Fargo Bank,* 419 F.3d at 962. Section 43 defines the procedural requirements for a Federal banking agency issuing an interpretative rule which "concludes that Federal law preempts the application to a national bank of any State law regarding community reinvestment, consumer protection, [or] fair lending ...." 12 U.S.C. § 43a. Section 43 a states that the appropriate federal banking agency must, "(1) publish in the Federal Register notice of the preemption or discrimination issue that the agency is considering (including a description of each State law at issue); (2) give interested parties not less than 30 days in which to submit written comments; and (3) ... consider any comments received."

The Court finds that the OCC acted within its statutory authority, because the OCC published its proposed rule in the Federal Register, received and considered comments from the public, and finally issued its final regulation.

Additionally, the Court finds that Section 7.4008 is a reasonable and rational exercise of the OCC's rule making authority, and therefore is entitled to deference by this Court. The Supreme Court has stated that when a federal agency promulgates regulations intended to preempt state law, the court's inquiry is limited "if [the agency's] choice represents a reasonable accommodation of conflicting policies that were committed to the agency's care by the statute, [the courts] should not disturb it unless it appears from the statute or its legislative history that the accommodation is not one that Congress would have sanctioned." *de la Cuesta,* 458 U.S. at 154,

102 S.Ct. 3014. The Court finds that Section 7.4008 represents Supreme Court precedents and therefore represents reasonable rule making authority under the NBA.

### C. *APPLICATION TO SECTION 1748.9*

1. Express Preemption of Rose's First Cause of Action

■ Rose's first cause of action is based on an alleged violation of Section 1748.9. However, section 1748.9 is expressly preempted by the plain language of Section 7.4008, because Congress has explicitly defined the extent to which its enactment preempts state law. *See English v. Gen. Elect. Corp.,* 496 U.S. 72, 78–79, 110 S.Ct. 2270, 110 L.Ed.2d 65 (1990); *Gadda v. Ashcroft,* 377 F.3d 934, 944 (9th Cir.2004). The fact that Section 7.4008 is a regulation, and not a federal statute, makes no difference to its preemptive effect. *La. Pub. Serv. Comm'n,* 476 U.S. at 369, 106 S.Ct. 1890; *Fid. Fed. Sav. & Loan Ass'n v. de la Cuesta,* 458 U.S. 141, 153, 102 S.Ct. 3014, 73 L.Ed.2d 664 (1982).

Hence Section 1748.9 is preempted by Section 7.4008, because Section 1748.9 is a state law which "obstructs, conditions, or impairs" a national bank's exercise of federally permitted banking activities. Because Section 1748.9 directs the disclosure of certain information in credit card solicitations, and conditions a national bank's power to make convenience check loans on compliance with those disclosures. Thus Section 1748.9 directly conflicts with Section 7.4008 which permits national banks to exercise non-real estate lending powers without regard to certain credit-related documents.

The Court finds that recent jurisprudence concerning Section 7.4008 lends support to its conclusion that Section 1748.9 is preempted by Section 7.4008. For in-

stance, in *Abel v. Keybank USA, N.A.*, 313 F.Supp.2d 720, 727–28 (N.D.Ohio 2004), the court held that Section 7.4008 "indicates that national banks may lend money without regard to state laws imposing requirements as to the terms of credit."

## 2. Preemption of Rose's Second and Third Causes of Action

 The Court finds that because Section 1748.9 is preempted, UCL claims based on failure to comply with that statute are also preempted. The Court finds that Rose's second, and third causes of action are impliedly dependent on a failure to comply with Section 1748.9 even though they do not expressly refer to Section 1748.9.

For instance, in Rose's second cause of action, Rose alleges that convenience check offers were fraudulent because they did not disclose that checks would accrue finance charges immediately upon use. (FAC, ¶ 31). The Court finds that this claim is dependent on a finding that Chase failed to disclose that a grace period did not apply as required by Section 1748.9(a)(3).

In Rose's third cause of action, Rose alleges that Chase's convenience check offers were unfair because Chase "induced customers to use convenience checks without warning them they would incur immediate finance charges." (FAC, ¶ 41.) The Court finds that this allegation also depends on a finding that Chase did not make disclosures required by Section 1748.9.

Additionally, the Court agrees with Chase that Rose's second and third causes of action are also preempted because the "single duty underlying all of [Rose's] claims is an alleged state-imposed requirement that Chase *affirmatively* include certain disclosures in its convenience check offers," and that such a disclosure requirement is expressly preempted by Section 7.4008. (Mot., p. 23; italics in original.) Again, Section 7.4008(d)(2) states, that a "national bank may make non-real estate loans without regard to state law limitations concerning; disclosure and advertising, including laws requiring specific statements, information, or other content to be included in credit application forms, credit solicitations, billing statements, credit contracts, or other credit-related documents." Therefore, because Rose's UCL causes of action are dependent on a finding that Chase violated the UCL by failing to make certain disclosures in convenience check offers, these causes of action are preempted by Section 7.4008.

## D. RELIEF

Based on the Court's finding that Section 1748.9 is preempted by the NBA and Section 7.4008, the Court need not address the issue of relief.

## IV. *CONCLUSION*

The Court finds that Section 1748.9 is preempted by Section 7.4008 and a long line of preemption jurisprudence. The Court also finds that Rose's UCL claims, premised on Chase's failure to make the disclosure purportedly mandated under Section 1748.9, fails as a matter of law. Hence, Chase is entitled to judgment on the pleadings.